**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
**LEE CRAIG WHITE,**

                                    **Petitioner,**

  **v.**                                                      **9:02-CV-0439**
                                                                    **(NPM)**

**VICTOR T. HERBERT, Superintendent,**

                                    **Respondent.**
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

<u>**APPEARANCES:**</u>                     <u>**OF COUNSEL:**</u>

**FOR THE PETITIONER**:

**LEE CRAIG WHITE**
Petitioner, <u>pro se</u>
98-B-1584
Attica Correctional Facility
Box 149
Attica, NY 14011-0149

**FOR THE RESPONDENT:**

**HON. ELIOT SPITZER**            **MARIA MORAN, Esq.**
Attorney General of the              Assistant Attorney General
State of New York
615 Erie Boulevard West
Suite 102
Syracuse, NY 13204-2455

**NEAL P. MCCURN**
**SENIOR UNITED STATES DISTRICT JUDGE**

                    <u>**MEMORANDUM-DECISION AND ORDER**</u>

**I.    <u>Background</u>**

          **A.    <u>State Court Proceedings</u>**

According to the testimony adduced at trial, in the Fall of 1996, the Syracuse Police Department, in an effort to reduce the sale of illegal narcotics in the Syracuse, New York area, began a criminal investigation in which John C. was used by the department as a confidential informant.[1]  See Transcript of Trial of Lee Craig White (6/30/98) ("Trial Tr.") at 247-48.

On December 5, 1996, officer David Procopio, who at the time worked in the narcotics division of the police department, requested that John C. attempt to purchase illegal narcotics from petitioner, pro se Lee Craig White.  Trial Tr. at 252.  Law enforcement agents subsequently arranged for John C. to meet with White at a parking lot at the Carousel Center mall in Syracuse at approximately 3:30 p.m. on December 5th.  Id. Procopio, who was monitoring the scheduled drug sale, observed White drive into the parking lot soon after John C. had arrived at that location.  Trial Tr. at 253.  John C. then entered White's vehicle and the two briefly met.  Id.  John C. soon thereafter emerged from the car and met with Procopio at a prearranged location inside the mall.  Id.  At that time, John C. provided Procopio with three plastic bags which he had purchased from White that contained a substance that proved to be cocaine.[2]  Trial Tr. at 253-54, 442.

In furtherance of the above-described criminal investigation, on July 10, 1997,

---

[1]      Due to the nature of the confidential informant's work, this Court will not refer to this individual's surname.

[2]      Prior to making that purchase, John C. was searched by Procopio, who determined that he was not in the possession of any narcotics prior to his scheduled meeting with White.  Trial Tr. at 253-54.

John C. arranged to make another cocaine purchase from White. Trial Tr. at 258. In that vein, at approximately 6:40 p.m. on July 10th, John C., together with New York State Police Investigator Shales Caicedo, met with White in front of a local convenience store anticipating that Investigator Caicedo would purchase three ounces of cocaine from White. Trial Tr. at 376. Although White did not have any cocaine at that time, he nevertheless scheduled a meeting with the men at a nearby park later that same day. Trial Tr. at 376-78. Investigator Caicedo and the confidential informant arrived at the location specified by White at approximately 7:15 that same evening, and at that time he sold to John C. three ounces of cocaine for $2,700. Trial Tr. at 378-80, 432-35.

The testimony at trial further established that on August 13, 1997, Bruce Nelson, a trooper with the New York State Police, accompanied John C. to his apartment in Syracuse, New York, in anticipation of another sale of narcotics by White. Trial Tr. at 400-01. Soon after those two men arrived at John C.'s apartment, White arrived at the apartment and was allowed inside the residence. Trial Tr. at 401-02. White then proceeded to the kitchen, weighed out three ounces of what proved to be cocaine on a kitchen scale, and sold that substance to Trooper Nelson for $2550.00. Trial Tr. at 402, 443-46.

As a result of the foregoing, on February 4, 1998, an Onondaga County grand jury returned an indictment against White in which he was accused of both the criminal sale and criminal possession of a controlled substance. See Indictment No. 98-0103

3

(reproduced in Appellant's Appendix on Appeal ("App") at A9-12) ("Indictment").

Beginning on June 30, 1998, White was tried in Onondaga County Court before a jury on

the charges brought against him in that accusatory instrument with Acting Supreme Court

Justice John J. Brunetti presiding.

At that trial, numerous witness testified on behalf of the prosecution, including

John C. and various law enforcement agents who had participated in the criminal

investigation described above.  White testified on own his behalf in his defense to the

charges against him.  After requesting that portions of White's testimony, as well as the

trial court's instructions regarding the defense of entrapment, be read back to the jury

during the course of its deliberations, see Trial Tr. at 569-577, the jury advised Justice

Brunetti that it had reached a verdict in the case.  Trial Tr. at 578.  In its verdict, the jury

acquitted White of charges which alleged that he criminally possessed and sold cocaine

on November 27, 1996, however the jury convicted him of the nine other counts brought

against him in the Indictment.  See Trial Tr. at 578-83.

On July 10, 1998, prior to sentencing, White's counsel moved to set aside the

jury's verdict pursuant to Section 330.30 of New York's Criminal Procedure Law

("CPL"), alleging in that motion that the jury's verdict should be set aside because of

newly discovered evidence and the prosecution's claimed failure to provide the defense

with Brady material.[3]  See App. at A24-31.  That application was opposed by the

_____

[3]        Brady v. Maryland, 373 U.S. 83 (1963).

Onondaga County District Attorney, <u>see</u> App. at A32-33, and on August 6, 1998, Justice

Brunetti denied that request.  <u>See</u> Transcript of Proceeding in <u>People v. White</u>, No. 98-

103-1 (8/6/98) ("August, 1998 Tr.") at 13-18.  Justice Brunetti then sentenced White to a

term of twenty years to life imprisonment for his convictions on Counts One and Seven in

the Indictment, both of which charged White with first degree criminal sale of a

controlled substance.  <u>See</u> August, 1998 Tr. at 22, 23.  Justice Brunetti sentenced White to

lesser, concurrent sentences on the remaining convictions.  <u>See</u> August, 1998 Tr. at 23-24.

White appealed his convictions and sentences to the New York State Supreme

Court, Appellate Division, Fourth Department through a brief filed by appellate counsel

dated October 18, 1999 ("App. Br.").  On May 10, 2000, the Fourth Department

unanimously affirmed White's convictions and sentences.  <u>People v. White</u>, 272 A.D.2d

872 (4th Dept. 2000).  New York's Court of Appeals subsequently denied White leave to

appeal in its order dated July 14, 2000.  <u>See</u> <u>People v. White</u>, 95 N.Y.2d 859 (2000).

On July 16, 2001, White filed a motion to vacate his judgment of conviction

pursuant to CPL § 440.10.  In that application, White asserted that his convictions must

be reversed because law enforcement agents failed to secure search warrants before they

made the audio and video recordings of the drug transactions of which White was found

ultimately guilty, thereby purportedly rendering the admission of those recordings into

evidence at White's trial illegal.  <u>See</u> CPL 440.10 Motion (7/16/01) ("CPL 440 Motion")

at 1-16.  In his affidavit dated August 10, 2001, the District Attorney opposed that

5

application, and in his Decision/Order dated August 16, 2001, Justice Brunetti denied

White's CPL 440 Motion in all respects.  See People v. White, No. 98-103 (N.Y. Sup. Ct.

Aug. 16, 2001) ("August, 2001 Decision").

### B.   Proceedings in this Court

White commenced this proceeding, pro se, on March 22, 2002.  See Petition.  In

his petition, White asserts two grounds in support of his request for federal habeas

intervention.[4]  Specifically, White argues that:  i) he received the ineffective assistance of

trial counsel; and ii) audio and video surveillance tapes were improperly received into

evidence against him at trial.  See Petition at 5-6.

On January 10, 2003, the Office of the Attorney General for the State of New York

("Attorney General"), who filed an appearance in this matter on respondent's behalf, filed

an answer and memorandum of law in opposition to White's petition.  See Dkt. Nos. 15-

16.  In opposing White's petition, the Attorney General argues that none of petitioner's

habeas claims have merit.  Dkt. No. 16.  On February 10, 2003, White filed a traverse in

further support of his habeas application.  Dkt. No. 18.

## II.   DISCUSSION

### A.   Applicable Standard of Review

---

[4]       Although White's habeas petition technically contains three grounds for relief,
the first "ground" in that pleading does not assert any federal claim for relief but instead
merely alleges that White has exhausted his state court remedies with respect to the other
grounds contained in his petition.  See Petition, Grounds One through Three.  Therefore, this
Court will consider White's pleading as one that asserts only two grounds for relief.  See
Petition.

In <u>Rodriguez v. Miller</u>, 439 F.3d 68 (2d Cir. 2006), the Second Circuit observed

that under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> a federal court may award habeas corpus relief with respect to
> a claim adjudicated on the merits in state court only if the
> adjudication resulted in an outcome that: (1) was "contrary to,
> or involved an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the
> United States"; or (2) was "based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding."

<u>Rodriguez</u>, 439 F.3d at 73 (quoting 28 U.S.C. § 2254(d)); <u>see also</u> <u>Jimenez v. Walker</u>,

458 F.3d 130 (2d Cir. 2006) (<u>passim</u>); <u>DeBerry v. Portuondo</u>, 403 F.3d 57, 66 (2d Cir.

2005); <u>Miranda v. Bennett</u>, 322 F.3d 171, 177-78 (2d Cir. 2003).  The AEDPA also

requires that in any such proceeding "a determination of a factual issue made by a State

court shall be presumed to be correct [and t]he applicant shall have the burden of

rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. §

2254(e)(1); <u>see also</u> <u>DeBerry</u>, 403 F.3d at 66; <u>Boyette v. LeFevre</u>, 246 F.3d 76, 88 (2d

Cir. 2001).

"A state court adjudication is 'contrary to' clearly established federal law only if

'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on

a question of law or if the state court decides a case differently than [the Supreme] Court

has on a set of materially indistinguishable facts.'"  <u>Rodriguez</u>, 439 F.3d at 73 (quoting

<u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000)).  Under the "unreasonable application"

clause of the AEDPA, a federal habeas court may only grant the writ where the state

court's decision "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Rodriguez, 439 F.3d at 73 (quoting Williams, 529 U.S. at 413). A federal court engaged in habeas review is not charged with determining whether the state court's determination was merely incorrect or erroneous, but instead whether such determination was "objectively unreasonable." Williams, 529 U.S. at 409; see also Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001). The Rodriguez court noted that although "'some increment of incorrectness beyond error is required'" in order to grant a federal habeas application, that increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Rodriguez, 439 F.3d at 73 (citing Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)).

### B.   Substance of White's Claims

#### 1.   Ineffective Assistance of Trial Counsel

White initially argues that his trial counsel rendered ineffective assistance. See Petition at 5. Thus, this Court briefly reviews the constitutional provision that affords criminal defendants a right to counsel, together with Supreme Court precedent that has interpreted that constitutional guarantee.

##### i.   Clearly Established Supreme Court Precedent

The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of

8

Counsel for his defence." U.S. Const., amend. VI. To establish a violation of this constitutional right to counsel, a habeas petitioner must show both: i) that counsel's representation fell below an objective standard of reasonableness, measured in light of the prevailing professional norms; and ii) resulting prejudice, i.e., a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 688-90 (1984); Wiggins v. Smith, 539 U.S. 510, 521 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established in Strickland).

### ii.      Contrary to, or Unreasonable Application of, Clearly Established Supreme Court Precedent

White argued that he received the ineffective assistance of trial counsel both in his direct appeal as well as in his CPL Motion. See App. Br. at 27-31; CPL Motion at 13-14. The undersigned must therefore determine whether the state court decisions denying those claims, see White, 272 A.D.2d at 873; August, 2001 Decision at 1-3, are either contrary to, or represent an unreasonable application of, Strickland and its progeny.

### a)      Failure to File Pretrial Motions

White initially faults trial counsel for his failure to file any suppression or omnibus motion prior to trial. See Petition at 5. However, with the exception of his claim that counsel wrongfully failed to seek the suppression of the audio and video surveillance evidence used against him at his trial, petitioner fails to discuss the legal basis that his trial counsel purportedly possessed for filing such pretrial motion(s). Nor has White

articulated the relief to which he claims he would have been entitled had such motion(s) been filed and thereafter granted.

Petitioner's failure to provide record support for this aspect of his federal habeas petition represents a failure on his part to both comply with Rule 2(c) of Rules Governing Section 2254 cases as well as to shoulder his burden of proof in the present action.  E.g., Gary v. Conway, No. 03-CV-0480, 2006 WL 3290149, at *15 (N.D.N.Y. Nov. 13, 2006) (Kahn, J.) (citation omitted); Banks v. New York State Dept. of Correctional Services, No. 01 CIV. 3985, 2001 WL 1448612, at *2 (S.D.N.Y. Nov 15, 2001) ("a petition may be dismissed if it contains only vague or conclusory allegations") (citation omitted); Vasquez v. McGrath, No. CIVS021925, 2005 WL 2001020, at *15 (E.D.Cal. Aug. 19, 2005); U.S. ex rel. Johnson v. Tally, 47 F.Supp.2d 943, 953-54 (N.D.Ill. 1999) (petitioner's failure to provide facts in support of habeas claim renders claim unreviewable by federal district court).

Furthermore, the state court record strongly suggests that defense counsel properly refrained from filing any pretrial motions in the related criminal proceeding.

In denying White's CPL 440 Motion, Justice Brunetti noted that "the [trial] court specifically discussed with defendant and his counsel the fact that there were no search and seizure issues or suppression issues in this matter."  See August, 2001 Decision at (unnumbered) p. 2.  In light of the county court's explicit determination that no suppression issues existed in the related criminal matter, petitioner cannot demonstrate

10

that his counsel rendered ineffective assistance in failing to file any suppression motion because "[t]rial counsel cannot be found to have rendered ineffective assistance by failing to pursue a particular strategy – including one seeking the suppression of evidence – where there exists no good faith basis for pursuing such a challenge." Tolliver v. Greiner, No. 9:02 CV 0570, 2005 WL 2179298, at *8 (N.D.N.Y. Sept. 8, 2005) (Treece, M.J.) (citation omitted), adopted Tolliver v. Greiner, No. 9:02 CV 0570, 2005 WL 2437021 (N.D.N.Y. Sept. 30, 2005) (Kahn, J.), appeal dismissed, Tolliver v. Greiner, No. 05-6390pr, slip op. at 1 (2d Cir. Apr. 26, 2006).

Additionally, it is apparent that the district attorney was required to provide defense counsel with various discovery materials prior to trial without any formal request for same. Specifically, in the underlying criminal matter, Justice Brunetti issued a pretrial order in which he, inter alia, outlined the obligation of the district attorney to provide to defense counsel, without the necessity of any motion:  i) written notice of the prosecution's intent to refer at trial to any prior "crimes, wrongs or acts" of White; ii) prior statements and criminal histories of all prosecution witnesses; and iii) a written list of potential prosecution witnesses. See Pretrial Order of Hon. John J. Brunetti (3/26/97) (reproduced in App. at A13-23) ("March, 1997 Pretrial Order") at ¶¶ IV, V. That ordered also *specifically prohibited counsel from filing* motions seeking:  i) a Ventimiglia hearing[5]; ii) discovery materials that the prosecution was required to provide in light of

---

[5]      People v. Ventimiglia, 52 N.Y.2d 350, 438 N.Y.S. 2d 261 (1981).  Justice Brunetti noted in his pretrial order that defense counsel "will be deemed to have requested"

Justice Brunetti's pretrial order; and/or iii) a <u>Sandoval</u> hearing.[6]  <u>See</u> March, 1997 Pretrial

Order at ¶¶ IV, V.

The foregoing strongly suggests that counsel refrained from filing any pretrial

motions in the related criminal matter because there was either no legal basis for filing the

request or in recognition of the fact that the district attorney was already required to

provide the defense with pretrial discovery in light of Justice Brunetti's March, 1997

Pretrial Order.  Since petitioner has failed to establish that his trial counsel's failure to file

any pretrial motions was objectively unreasonable, this aspect of his petition is without

substance.[7]

**b)      <u>Inadequate Pretrial Preparation</u>**

White next faults counsel for his failure to properly prepare a defense to the

charges brought against petitioner.  Petition at 5.  Specifically, he alleges that his trial

---

such a hearing, which is the procedure whereby county courts determine whether the
probative value of prior bad act evidence outweighs its prejudicial impact.  <u>See</u> <u>Sutton v.
Herbert</u>, 39 F.Supp.2d 335, 339 n.3 (S.D.N.Y. 1999); <u>People v. Pope</u>, 241 A.D.2d 756, 759
(3d Dept. 1997).

[6]      <u>People v. Sandoval</u>, 34 N.Y.2d 371 (1974).  A <u>Sandoval</u> hearing is utilized to
determine the manner in which a testifying defendant can be impeached on
cross-examination about his prior bad acts.  <u>See</u> <u>Jones v. Artuz</u>, No. 97-CV-2063, 2002 WL
31006171 at *9 (E.D.N.Y. Aug. 30, 2002)).  Justice Brunetti noted that a <u>Sandoval</u> hearing
would be conducted immediately prior to trial without the necessity of any motion.  March,
1997 Pretrial Order at ¶ V(2).

[7]      This Court's determination that White has failed to establish that his trial
attorney improperly failed to file any pretrial motions also encompasses petitioner's claim in
his final ground for relief that his counsel rendered ineffective assistance by failing to file a
suppression motion.  <u>See</u> Petition at (attached) p. B.

attorney "failed to conduct factual or legal investigations to determine if matters of defense could have been developed." Id. In this theory, White further contends that trial counsel failed to allow sufficient "time for reflection and preparation for trial." Id.

However, White has failed to articulate any defense to the criminal charges which he now claims was wrongfully not pursued by trial counsel.[8] Thus, this aspect of his petition appears to suggest that this Court speculate as to the type of defenses which trial counsel improperly failed to pursue, despite the well-settled principle that federal district courts cannot grant habeas relief based upon unsubstantiated surmise, opinion or speculation. Wood v. Bartholomew, 516 U.S. 1, 8 (1995) (federal courts may not grant "habeas relief on the basis of little more than speculation with slight support"); Youngblood v. Conway, 426 F.Supp.2d 107, 125 (W.D.N.Y. 2006) (because petitioner's claim was "based on nothing more than mere speculation, it cannot provide a basis for habeas relief"); see also Williams v. Burge, No. 02-CV-0695, 2005 WL 2179423, at *16 (N.D.N.Y. Aug. 15, 2005) (Peebles, M.J.), adopted Williams v. Burge, No. 02-CV-0695, Dkt. No. 35 (N.D.N.Y. Dec. 7, 2005) (Hurd, D.J.); Jones v. O'Keefe, No. 99 Civ.12279, 2000 WL 1290595, at *5 (S.D.N.Y. Sept. 12, 2000) (citations omitted); Franza v. Stinson, 58 F.Supp.2d 124, 154 (S.D.N.Y. 1999); Osinoiki v. Riley, CV-90-2097, 1990 WL 152540, at *3 (E.D.N.Y. Sept. 28, 1990) (denying petition for writ of habeas corpus,

---

[8]     White' s principle defense to the charges was his claim that he was entrapped into selling the drugs by the confidential informant. E.g., Trial Tr. at 504-05; see also Trial Tr. at 535-40 (County Court instructing the jury as to the defense of entrapment).

where, inter alia, two of petitioner's bases for relief were based upon "nothing more than

rank speculation").

    Moreover, the record establishes that counsel had considered pursuing a defense

other than entrapment to the charges.  Specifically, on June 17, 1999, defense counsel, an

assistant district attorney and Justice Brunetti met for a pretrial conference during which

White's trial attorney described in some detail a potential defense to the charges that

counsel stated he might pursue.  In articulating that potential defense, counsel stated:

> Basically what the theory is, how it comes about, as I was
> discussing the defenses with Mr. White he indicated
> entrapment, and I said Craig, it doesn't make sense to me why
> they would entrap you, why would they pick you out?  And
> his theory behind it is because he has a rival who has been a
> rival of his for some time, not only in the neighborhood, but
> for the affections of a young lady
> who is an undercover investigator for the Syracuse Police
> Department, who has spoken to this woman and expressed his
> inclination that they were going to get Craig, they were going
> to prove to her he was a drug dealer, and he actually took her
> out with him on several occasions to try to convince her of my
> client's wrongdoing, although she never was convinced.  He
> indicated to her they were going to get him, and although he,
> he might not be necessarily the investigator involved in this
> case, I think that he might have been the one who initially
> threw this name out for potential investigation.

See Transcript of Pretrial Hearing before Justice Brunetti (6/17/99) (Resp. Exh. 3)

("June 17th Hearing") at 3-4.  After some discussion from the prosecutor on this potential

defense, Justice Brunetti advised trial counsel as follows:

> Let me just convey my preliminary reaction to this.  If you
> attempt successfully to inject this into the trial, totally

14

> independent of the rules relative to predisposition on
> entrapment, but you also, or as an alternative intend to
> develop some vindictive singling out, you will then open the
> door to ... information that otherwise would not be admissible
> in this trial, which is the good faith basis for what they
> undertook to begin with, even though it does not constitute
> predisposition evidence, if it constitutes good faith evidence
> to rebut your implication that this investigation by the police
> department was infected with bias and personal motive ....

June 17th Hearing at p. 8.

Thus, it is apparent that not only did White's trial attorney discuss potential defenses with his client, see June 17th Hearing at 3, but also that he quite reasonably failed to pursue a defense other than entrapment which he had actively considered pursuing, in all likelihood because that the alternative defense could have subjected White to matters on cross-examination that may well have unduly prejudiced him.  Thus, this aspect of his petition is without substance.

White additionally asserts that his attorney failed to properly prepare for his trial. See Petition at p. 5.  Although not entirely clear from his petition, it appears as though this aspect of his habeas application is based upon the fact that at sentencing, White's counsel informed Justice Brunetti that although he had received a report relating to the undercover investigation that was conducted by law enforcement agents before testimony began at the criminal trial, counsel had nevertheless failed to review that report until after the trial had concluded.  See id.; see also Sentencing Tr. at 3-6.[9]  At that time, counsel

---

[9]       That report, which the parties have referred to as the "Plant Report," is reproduced in White's CPL Motion at A28-31.  This Court will likewise refer to that

advised the trial court that he believed the information contained in the report could have been used to:  i) refute testimony by prosecution witnesses regarding the time at which White changed the number on his beeper (which law enforcement agents argued was an attempt by White conceal his identity); ii) argue that his criminal activity occurred on, at most, three days, rather than the four days charged in the Indictment; and iii) establish that White had refused to sell drugs to John C. on at least one occasion, thereby bolstering petitioner's entrapment defense.  See Sentencing Tr. at 7-12.

However, Justice Brunetti concluded that even if counsel had been fully aware of all of the information contained in the Plant Report at the time of trial, there was no reasonable probability that counsel's knowledge of that information would have affected the outcome of the trial because:  i) counsel could "not have made any use of it;" and ii) the prosecution had presented "an avalanche" of evidence against White at trial.  See Sentencing Tr. at pp. 13-14.

This Court agrees.

With respect to counsel's claim at sentencing that the information in the Plant Report could have been used to challenge testimony of prosecution witnesses regarding the time at which White apparently had the number on his pager changed, the Court notes that during the course of White's direct examination, counsel specifically referred to the fact that White owned a beeper and that such device was used by him in conjunction with

---

document as the Plant Report.

16

John C.'s requests to purchase narcotics from White.  <u>See</u> Trial Tr. at 463-64.  Although White's counsel clearly had the opportunity to question White about the time at which he changed the number on his pager in order to challenge the prosecution witnesses' testimony relating to this issue, counsel chose to refrain from pursuing that line of questioning.  Any information in the Plant Report relating to this issue was clearly inconsequential in light of the fact that defense counsel could have readily asked White himself when he had the number on his pager changed.

Addressing next petitioner's claim that counsel's failure to timely review the Plant Report precluded him from arguing that White should have only been charged with narcotics-related offenses arising out of three separate days, rather than the four days alleged in the Indictment, this argument appears to overlook the fact that after the prosecution rested, the County Court specifically found that the prosecution met its burden of establishing all of the elements it was required to prove with respect to all of the criminal charges brought against White (<u>see</u> Trial Tr. at 453).  That ruling casts significant doubt on petitioner's claim that counsel could have succeeded on a pre-trial motion to dismiss any of the charges brought in the Indictment.

Finally, petitioner's assertion that counsel's failure to timely review the Plant Report prevented White from bolstering his entrapment defense fails to acknowledge the fact that the jury was already aware, through the testimony of White, that he had refused to sell drugs to John C. on occasion.  Specifically, White testified that in July, 1997, John

17

C. "kept bugging [White] and bugging [White] every time I [saw] him," Trial Tr. at 467, and that eventually he just "gave in" and sold John C. the drugs that formed the basis of the charges alleged in Counts Four through Six in the Indictment. Trial Tr. at 467-68. White testified that after that sale, John C. "kept calling [White], calling [White], beeping [White], beeping [White]," and that petitioner "finally agreed to get some drugs for" the confidential informant the following month, in August, 1997. Trial Tr. at 469. The foregoing testimony strongly suggests that White had refused to sell drugs to the confidential informant despite John C's request for such narcotics. Therefore, defense counsel's failure to bring to the jury's attention the fact that the Plant Report demonstrated that White had failed to complete a sale requested by the confidential informant, see, e.g., Plant Report at 1, could not have prejudiced White.

In sum, even assuming, arguendo, that counsel's conduct in failing to review the Plant Report in time for its effective use at trial constituted objectively unreasonable conduct, White has nevertheless not established that he was prejudiced by that claimed failure of his attorney.[10]

### c)    Failure to Move to Dismiss Criminal Charges

Petitioner next faults trial counsel due to his failure to move, under CPL § 290.10,

---

[10]    This Court would be remiss if failed to acknowledge Justice Brunetti's prophetic comment on this issue. Specifically, he noted at White's sentencing that any future claim in which it was alleged that counsel rendered ineffective assistance due to his failure to read the Plant Report would be "illusionary" because White "was clearly adequately represented by competent counsel" in that criminal matter. See Sentencing Tr. at 14.

to dismiss the criminal indictment on the ground that the evidence adduced at trial was not legally sufficient to establish the offense(s) charged therein.[11]  See Petition at (attached) p. A.

However, even though trial counsel declined to make such a motion, see Trial Tr. at 453, the County Court nevertheless deemed that motion to have been made by counsel. Id.  Justice Brunetti then denied that application based upon his determination that the prosecution more than met its burden of establishing all of the elements it was required to prove with respect to the criminal charges brought against White.  Id.  The foregoing conclusively establishes that White could not have been prejudiced by counsel's failure to bring a CPL § 290.10 motion at the close of the People's proof.

### d)      **Failure to Rely on Presumption of Innocence**

Petitioner next faults his attorney because he admitted in open court that White was a "drug dealer."  Petition at (attached) p. A; Supporting Mem. at 14.  He argues that such statement resulted in his being deprived of the presumption of innocence afforded all criminal defendants, and therefore deprived White of his right to a fair trial.  Petition at (attached) p. A.

At the conclusion of the June 17th Hearing, defense counsel made the following

---

[11]      That procedure under the CPL, which is now referred to as a request for a trial order of dismissal, is derived from the prior practice utilized to secure the same result – the directed verdict of acquittal.  Faux v. Jones, 728 F.Supp. 903, 907 (W.D.N.Y. 1990) (citing CPL § 290.10).

comment to the county court:

> Not that I think that Mr. White's going to enter a guilty plea,
> but if he is I don't want, I have other drug dealers to deal with
> and I don't want to waste my hours on this case.

Id. at p. 11.

Although counsel's comment may have been regrettable, it was said prior to the
time at which a jury was drawn for White's criminal case.  Therefore, petitioner could not
possibly establish that such comment deprived him of either the presumption of
innocence or his right to a fair trial.  Furthermore, when he testified at his trial, White
clearly informed the jury that he had not sold cocaine in the past, and that he had only
sold the narcotics to the confidential informant as "a favor" for him.  See Trial Tr. at 460,
69.  Additionally, Justice Brunetti properly instructed the jury of the fact that White was
presumed innocent of the charges brought against him, and that he could only be found
guilty of those charges by the jury if the prosecution established, beyond a reasonable
doubt, all of the elements of the crimes that petitioner was accused of committing.  See
Trial Tr. at pp. 546-50.[12]  Therefore, this final aspect of petitioner's ineffective assistance
claim is without substance.

In sum, petitioner has failed to demonstrate that the state court decisions which
denied his claim alleging ineffective assistance of counsel, see White, 272 A.D.2d at 873;

---

[12]    The jury is presumed to have followed this and all the portions of the trial
court's instructions.  See Weeks v. Angelone, 528 U.S. 225, 234, 120 S.Ct. 727, 733 (2000);
Shariff v. Artuz, No. 97CIV.2882, 2001 WL 135763, at *3 (S.D.N.Y. Feb. 16, 2001)
(citation omitted)).

August, 2001 Decision at 1-3, are erroneous in any way.  He has therefore a fortiori failed to establish that either of those decisions are either contrary to, or represent an unreasonable application of, the above-referenced Supreme Court precedent.

### 2.   **Failure to Obtain Warrants**

In his final ground for relief, White alleges that his arrest was illegal because it was effectuated without the "required and necessitated warrants," and came about as a result of illegal "electronic audio/video surveillance."  See Petition at 6.

This claim necessarily invokes petitioner's rights under the Fourth Amendment to the United States Constitution, which "protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures....'" United States v. Lifshitz, 369 F.3d 173, 178 (2d Cir. 2004) (quoting U.S. Const., amend. IV).[13]  However, such a claim is unavailable for federal habeas review in light of the well-established rule announced in Stone v. Powell, 428 U.S. 465 (1976).  See Blanchard v. White, No.  02-CV-0081, slip op. at 27-29 (N.D.N.Y. Apr. 25, 2005), adopted, Blanchard v. White, No.  02-CV-0081 (Dkt. No.  20) (N.D.N.Y. Apr. 25, 2005) (Kahn, J.).  In

---

[13]     Although petitioner has not specifically referred to the Fourth Amendment in his claim, the undersigned notes that a government's activities in electronically listening to and recording an individual's conversation constitutes a 'search and seizure' within the meaning of the Fourth Amendment.  Katz v. United States, 389 U.S. 347, 353 (1967); see also Acevedo v. Greiner, No. 00 CIV. 9096, 2001 WL 1382585, at *1 (S.D.N.Y. Nov. 6, 2001) (claim challenging wiretap of telephone implicates Fourth Amendment). Additionally, a claim that the police lacked probable cause to arrest an individual is one rooted in the Fourth Amendment to the United States Constitution.  See Rodriguez v. Zon, No. 01-CV-2036, 2004 WL 1752418, at *7 (E.D.N.Y. Aug. 5, 2004); McPherson v. Greiner, No. 02 CIV.2726, 2003 WL 22405449, at *16 (S.D.N.Y. Oct. 22, 2003).

Stone, the Supreme Court determined that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone, 428 U.S. at 494 (footnote omitted); see also Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992) (citing Stone); Quick v. Allard, No. 04-CV-2069, 2004 WL 2326376, at *2 (E.D.N.Y. Oct. 12, 2004) (citing Stone); McPherson, 2003 WL 22405449, at *15-16 (citations omitted).

The Second Circuit has noted that federal review of Fourth Amendment claims in federal habeas petitions may only be undertaken in one of two instances:  a) if the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process. Capellan, 975 F.2d at 70 (citation omitted); Hickey v. Conway, No. 03-CV-350, 2005 WL 1660115, at *4 (N.D.N.Y. July 6, 2005) (Scullin, C.J.) (citing Capellan); Quick, 2004 WL 2326376, at *2 (citing Capellan); McPherson, 2003 WL 22405449, at *16 (citing Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977) (en banc)).

New York State has provided an opportunity for defendants to fully and fairly litigate Fourth Amendment claims.  See CPL § 710; Capellan, 975 F.2d at 70 n.1; Jackson v. Lacy, 74 F.Supp.2d 173, 176 (N.D.N.Y. 1999) (McAvoy, C.J.) (adopting Report-

Recommendation of Magistrate Judge Ralph W. Smith, Jr.).  Specifically, under the CPL, a criminal defendant may move to suppress evidence he believes was unlawfully or improperly acquired if he "has reasonable cause to believe that such [evidence] may be offered against him in a criminal action."  See CPL § 710.20.  Although White's counsel did not avail himself of the opportunity to seek the suppression of the audio and video surveillance evidence that was ultimately used against him at his trial, this Court is nevertheless precluded from considering the substance of this claim because counsel had the *opportunity* to litigate his Fourth Amendment claim in the state court, and the Stone doctrine precludes federal review of Fourth Amendment claims even where the defendant chooses not avail himself of the opportunity to litigate such claims in the state courts.  See Crawford v. Artuz, 165 F.Supp.2d 627, 637 (S.D.N.Y. 2001); Collins v. Scully, 878 F.Supp. 452, 458 n.11 (E.D.N.Y. 1995) ("a full and fair opportunity to litigate a Fourth Amendment claim only requires the mere presence of the opportunity, defendant need not avail himself of that opportunity") (citing Gates, 568 F.2d at 836-40).  Thus, the aspect of White's habeas claim challenging the admission of the audio surveillance evidence could be denied on the basis of the Stone doctrine alone.  See Capellan, 975 F.2d at 70 (citation omitted); Hickey, 2005 WL 1660115, at *4-5; McPherson, 2003 WL 22405449, at *16; Ferron v. Goord, 255 F.Supp.2d 127, 130-31 (W.D.N.Y. 2003) (citations omitted); Livoti v. Girdich, No. 02-CV-6111, 2003 WL 22953071, at *4 (E.D.N.Y. Oct. 16, 2003).

As to the videotape surveillance that was used against White at his trial, e.g., Trial

23

Tr. at 389, this Court notes that unlike audio recordings made through use of a body wire, because White had no "legitimate expectation of privacy" with respect to his actions that were videotaped in public places or in the home of the confidential informant, petitioner could not have reasonably asserted in the state courts – and cannot now properly assert herein – any Fourth Amendment claim as to such evidence.  E.g., United States v. Davis, 326 F.3d 361, 365 (2d Cir.2003) ("what a person knowingly exposes to the public ... does not receive Fourth Amendment protection"); United States v. Vega, 309 F.Supp.2d 609, 612-13 (S.D.N.Y. 2004).

Additionally, the Court further notes that "[t]he express or implied consent of one participant in a [recorded] conversation is sufficient to satisfy the requirements of ... the Fourth Amendment."  United States v. Heatley, 994 F.Supp. 483, 490 (S.D.N.Y. 1998); see also Blanchard, slip op. at 20 n.29.  Since John C. clearly consented to the recording of the conversations between he and White,  see, e.g., Trial Tr. at 359-60, White's Fourth Amendment claim must fail for this reason as well.  Therefore, petitioner's final ground for relief is without substance.

**III.   Certificate of Appealability**

Finally, the undersigned notes that 28 U.S.C. § 2253(c)(1) provides in relevant part that:

> Unless a circuit justice or judge issues a certificate of
> appealability, an appeal may not be taken to the court of
> appeals from –

> (A) the final order in a habeas corpus
> proceeding in which the detention complained
> of arises out of process issued by a State court
> ....[14]

A Certificate of Appealability may only be issued "if the applicant has made a substantial

showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2).  Since White

has failed to make such a showing herein, the Court declines to issue any Certificate of

Appealability in this matter.

 **WHEREFORE**, based upon the above, it is hereby

 **ORDERED**, that the petition filed in this matter is **DENIED** and **DISMISSED**,

and it is further

 **ORDERED**, that the state court records be returned directly to the Attorney

General at the conclusion of these proceedings (including any appeal of this

Memorandum-Decision and Order filed by any party), and it is further

 **ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-

Decision and Order upon the parties by regular or electronic mail.

Dated:  December 15, 2006
    Syracuse, NY

           *Neal P. McCurn*
           Neal P. McCurn
           Senior  U.S. District Judge

---

[14]  Rule 22 of the Federal Rules of Appellate Procedure also provides that an
appeal may not proceed "unless a circuit justice or a circuit or district judge issues a
certificate of appealability under 28 U.S.C. § 2253(c)."  *See* Fed.R.App.P. 22(b).